**UNITED STATES of America**

v.

**Ifedoo Noble ENIGWE.**

**Criminal Action No. 92–00257.**

United States District Court,
E.D. Pennsylvania.

July 8, 1998.

Ifedoo Noble Enigwe, Fairton, NJ, pro se.

William Nugent, Asst. U.S. Atty., Philadelphia, PA, for U.S. Government.

### ORDER AND MEMORANDUM

#### ORDER

DuBOIS, District Judge.

**AND NOW,** to wit, this 8th day of July, 1998, upon consideration of defendant's Motion for Production of the Grand Jury Minis-terial Records (Doc. No. 233, filed April 13, 1998), defendant's Addendum to Motion for Production of the Grand Jury Ministerial Records (Doc. No. 237, filed May 8, 1998), United States' Response to Defendant's "Motion for Production of the Grand Jury Ministerial Records" (Doc. No. 238, filed May 14, 1998), and defendant's Reply to Government's Response to Request for Grand Jury Records (Doc. No. 240, filed May 22, 1998), for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** that defendant's Motion for Production of the Grand Jury Ministerial Records, as amended by Addendum, is **DENIED.**

#### MEMORANDUM

**1. Background:** On May 6, 1992, defendant Ifedoo Noble Enigwe was indicted on four counts by a Grand Jury in the Eastern District of Pennsylvania for trafficking in heroin. On August 7, 1992, defendant was convicted by a jury on all four counts and, on August 13, 1993, was sentenced by this Court, *inter alia,* to 235 months in prison. The conviction and sentence were affirmed by the Third Circuit in an unpublished Memorandum Opinion on April 28, 1994. Since that time, defendant has submitted to the Court numerous letters, motions and requests, the instant matter being only the most recent.

Defendant moves to have the Court order production of: (1) the voting records of the grand jury (because defendant believes less than twelve (12) members voted to indict him); (2) the commencement and termination dates of the grand jury (because defendant believes that he was indicted by the grand jury after its term had expired); (3) the racial composition of the grand jury; (4) the criteria used in the selection of the grand jury; and (5) "any judicial policy that may exist to achieve a 'fair grand jury' in the district."

In his Reply, defendant voluntarily dropped his request for production of the racial composition of, criteria used to select, and judicial policy employed to ensure a "fair," grand jury. The Court therefore considers only defendant's request for production of the voting records and commence-

ment and termination dates of the grand jury.

**2. Discussion:** The government argues that defendant has no right to the requested records because, by failing to object before trial, defendant waived any objection he has "based on defects in the indictment ... other than that it fails to show jurisdiction in the court...." Fed.R.Crim.P. 12(b)(2). The Government is correct that "[p]ursuant to Fed.R.Crim.P. 12(b)(2) and 12(f), defendants waive all but jurisdictional claims of error [based on defects in the indictment] unless they raise their claims before trial." *United States v. Heffington*, 52 F.3d 335, 1995 WL 230367, *1 (9th Cir.1995) (citing *United States v. Smith*, 866 F.2d 1092, 1098 (9th Cir.1989)).

■ In response to the government, defendant contends that where less than twelve jurors vote for an indictment, or where an indictment is signed after the termination of the grand jury's service, a court lacks jurisdiction. In support, defendant cites *De Vincent v. United States*, 602 F.2d 1006 (1st Cir.1979). In that case, the defendant contended in a motion under 28 U.S.C. § 2255 that his indictment had not been passed upon by the grand jury as a whole, but had been prepared in private by the prosecutor and signed solely by the grand jury foreman. Assuming this allegation to be true, the First Circuit remanded with instructions to the district court to consider whether Federal Rule of Criminal Procedure 6(f) (requiring, *inter alia,* twelve grand jurors to vote to indict) codified a non-waivable, jurisdictional prerequisite to prosecution. *See id.* at 1009. The remand was based on *Gaither v. United States*, 413 F.2d 1061 (D.C.Cir.1969). The *Gaither* court held that where the language of an indictment is prepared by the prosecutor in private, and approved only by the grand jury foreman, the Fifth Amendment was violated. On remand in *De Vincent*, the district court dismissed the § 2255 motion; on appeal of that dismissal, the circuit court held that because the defendant was unable to offer evidence that the indictment was passed upon by fewer than twelve jurors, he "was merely speculating about the way in which he was indicted, [and thus] there was

no need to vacate the judgment of dismissal and hold further proceedings...." *De Vincent v. United States*, 632 F.2d 145, 146 (1st Cir.1980). It is clear, therefore, that *De Vincent* does not support defendant's position.

Notwithstanding the *Gaither* decision—which is not binding in the Third Circuit—this Court concludes that the requirement that at least twelve jurors vote to return an indictment is not a jurisdictional prerequisite to an indictment within the meaning of Rule 12(b). *Cf. United States v. Oliver*, 60 F.3d 547, 549 (9th Cir.1995) (holding that defendants who failed to object before trial to failure to return an indictment in open court pursuant to Rule 6(f) waived their objection); *Heffington,* 52 F.3d 335, 1995 WL 230367 at *1 (9th Cir.1995) ("We have defined jurisdictional claims as constitutional claims that challenge the right of the state to hale the defendant into court.... In *United States v. Lennick,* 18 F.3d 814, 817–18 (9th Cir.), *cert. denied,* 513 U.S. 856, 115 S.Ct. 162, 130 L.Ed.2d 100 (1994), we held that noncompliance with Rule 6(f) did not necessarily deprive the district court of jurisdiction, but was subject to harmless error analysis." (internal quotation omitted)).

■ There is a split of authority as to whether there is jurisdiction over an indictment returned by a grand jury sitting beyond its authorized term. See *Shimon v. United States*, 352 F.2d 449, 451 (D.C.Cir. 1965) (holding that where grand jury sat beyond its term but all parties believed it was a valid grand jury, the court would not order a new trial); *United States v. Jesus Herrera–Diaz*, C.A. No. 85 CR 469, 1987 WL 13993 (N.D.Ill. July 2, 1987) (same); *but see United States v. Armored Transport, Inc.,* 629 F.2d 1313, 1316 (9th Cir.1980) (holding that a grand jury sitting beyond its term lacks jurisdiction); *United States v. Fein,* 504 F.2d 1170 (2d Cir.1974) (same). The Court will not reach this issue. Even if the holding in *Armored Transport* (that a grand jury sitting beyond its term lacks jurisdiction) is correct—and for that matter, even if the holding in *Gaither* (that twelve grand jurors is a jurisdictional prerequisite to an indictment) is correct—defendant has not al-

leged any actual defect in the indictment. Defendant has asked simply to have the records produced in order to determine if there is a defect based on his allegation that the procedures followed in this case have "raised eyebrows." The only concrete suggestion of impropriety raised by defendant is that he was indicted exactly thirty (30) days after his arrest—the last day on which an indictment could be filed under the Speedy Trial Act, 18 U.S.C. § 3161(b). The Court concludes, however, that there is nothing improper in the filing of an indictment on the thirtieth day after arrest, and defendant is therefore only speculating about potential flaws in his indictment. *See De Vincent*, 632 F.2d at 146 (affirming dismissal of § 2255 motion where defendant "was merely speculating about the way in which he was indicted").

Defendant relies on *In re Grand Jury Investigation*, 903 F.2d 180 (3d Cir.1990), for the proposition that the secrecy provisions of Rule 6(e) protect only "matters occurring before the grand jury" and that "disclosure of the commencement and termination dates of the grand jury does not disclose the essence of what took place in the grand jury room." *Id.* at 182. While *DiLoreto* is still good law, the court in that case noted that there were "no specific" reasons which militated against disclosure. *See id.* at 184. In this case, there are ample "specific reasons" militating against disclosure: most significantly, defendant has failed to come forward with more than his conclusory allegations of defective process, and he advances these contentions years after his conviction, appeals and habeas remedies have been exhausted. *See, e.g., United States v. Blackwell*, 954 F.Supp. 944, 965 (D.N.J.1997) ("Conclusory or speculative allegations about what went wrong in a grand jury proceeding give no cause to question the regularity of the grand jury's functioning." (citations omitted)).

Moreover, the voting record of a grand jury is not encompassed by the holding in *DiLoreto* ; instead, Federal Rule of Criminal Procedure 6(c) expressly provides that a grand jury's voting record is not to be made public except on order of a court. Thus, the "record revealing the number of grand jurors concurring to indict should remain secret absent a particularized, discrete showing of need." *United States v. Deffenbaugh Industries, Inc.*, 957 F.2d 749, 756 (10th Cir.1992) (citations omitted); *see also United States v. Mechanik*, 475 U.S. 66, 75, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (holding that party seeking disclosure of protected grand jury records must show "particularized need"). For the reasons discussed above, defendant has made no such showing of need in this case.

Finally, the Court notes that even if there were defects in the indictment procedure in this case, "errors in the grand jury indictment procedure are subject to harmless error analysis unless 'the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair.' " *United States v. Lennick*, 18 F.3d 814, 817 (9th Cir.1994) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–57, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)); *see also Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. 2369 ("[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." (quoting *Mechanik*, 475 U.S. at 78, 106 S.Ct. 938)). A defect in the form of an indictment which does not prejudice defendant is negated by the verdict of a petit jury. *See Mechanik*, 475 U.S. at 71, 106 S.Ct. 938 ("We cannot accept the Court of Appeals' view that a violation of Rule 6(d) requires automatic reversal of a subsequent conviction regardless of the lack of prejudice."). In this case, even if defendant's unsupported speculation that fewer than twelve grand jurors voted to indict him or that the vote was taken after the grand jury's term had expired is correct, any error was rendered harmless by his subsequent conviction.

**3. Conclusion:** Because an indictment carries a "presumption of regularity," *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300–01, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991), based on the present state of the record, the Court concludes that in this case, the indictment was properly returned and it will not indulge defendant in what can only

be described as a fishing expedition. For the foregoing reasons, the Court has denied defendant's Motion for Production of the Grand Jury Ministerial Records, as amended by the Addendum to the Motion.